UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LATRICIA S.,[1]

        Plaintiff,

    v.                                                    23-CV-958-LJV
                                                              DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

On September 12, 2023, the plaintiff, Latricia S. ("Latricia"), brought this action

under the Social Security Act ("the Act").  Docket Item 1.  She seeks review of the

determination by the Commissioner of Social Security ("Commissioner") that she was

not disabled.[2]  *Id.*  On December 13, 2023, Latricia moved for judgment on the

pleadings, Docket Item 7; on January 29, 2024, the Commissioner responded and

cross-moved for judgment on the pleadings, Docket Item 10; and on February 12, 2024,

Latricia replied, Docket Item 11.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Latricia applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements.  *See* 42 U.S.C. § 423(c).  SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need.  *Id.* § 1382(a).  A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs.  *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Latricia's motion and grants the Commissioner's cross motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation modified) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation modified) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

interpretation, the Commissioner's conclusion must be upheld.").  But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

### I.     THE ALJ'S DECISION

On May 19, 2023, the ALJ found that Latricia had not been under a disability from July 1, 2017, through the date of the decision.  *See* Docket Item 6 at 21–22.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a).  *See id.* at 7–9.

At step one, the ALJ found that Latricia had not engaged in substantial gainful activity since July 1, 2017, her alleged onset date.  *Id.* at 9.  At step two, the ALJ found that Latricia suffered from four severe, medically determinable impairments: "Crohn's disease; colitis; cervical radiculopathy; and obesity."  *Id.*

At step three, the ALJ found that Latricia severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 11–12.  More specifically, the ALJ found that Latricia's physical impairments did not meet or medically equal listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root) or 5.06 (inflammatory bowel disease).  *Id.*  In assessing Latricia's mental impairments, the ALJ found that Latricia was mildly impaired in all four areas of functioning: (1) understanding,

3

remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing herself. *Id.* at 10–11.

The ALJ then found that Latricia had the residual functional capacity ("RFC")[4] to "perform light work[] as defined in 20 C[.]F[.]R[. §§] 404.1567(b) and 416.967(b)" except that:

> [Latricia] can frequently move her neck side-to-side and up and down. [She] can frequently operate hand controls, reach, push, pull, handle, finger, and feel with both upper extremities. [She] can occasionally kneel, crouch, stoop, balance, and crawl, and can occasionally climb stairs and ramps. [She] can never climb ladders, ropes, and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. [She] can tolerate occasional exposure to vibration. In addition, [she] can understand, carry[ ]out, and remember simple instructions, and use judgment [to] make simple work-related decisions. [She] will be off task 10% of the workday.

*Id.* at 13.

At step four, the ALJ found that Latricia had no past relevant work. *Id.* at 20. But given Latricia's age, education, and RFC, the ALJ found at step five that Latricia could perform substantial gainful activity as an office helper, information clerk, or retail sales attendant. *Id.* at 20–21; *see Dictionary of Occupational Titles* 239.567-010, 1991 WL 672232 (Jan. 1, 2016); *id.* at 237.367-018, 1991 WL 672187 (Jan. 1, 2016); *id.* at 299.677-010, 1991 WL 672643 (Jan. 1, 2016). The ALJ therefore found that Latricia had not been under a disability from her alleged onset date through the date of the decision. *See* Docket Item 6 at 21; *see also id.* at 9.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

## II.    ALLEGATIONS

Generously reading Latricia's motion, this Court finds that she raises three arguments.  *See* Docket Item 7-1 at 19–26.  First, she argues that the ALJ impermissibly crafted the RFC based on his lay judgment.  *Id.* at 19–22.  Second, she argues that the ALJ failed to properly evaluate the opinion of Nikita Dave, M.D.  *Id.* at 22.  Finally, she argues that the ALJ crafted a highly specific off-task limitation that was not supported by substantial evidence.  *Id.* at 23–26.  For the reasons that follow, this Court disagrees.

## III.    ANALYSIS

### A. The RFC Determination

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  But that does not mean that an RFC must "perfectly correspond with any of the opinions of medical sources cited in [an ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 155 (2d Cir. 2024).  So long as an ALJ considers all the medical evidence and appropriately analyzes any medical opinions, an RFC consistent with the record is not error.  *See* 20 C.F.R. § 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional imitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

5

Latricia argues that the ALJ "failed to rely on medical opinions" and instead formulated her RFC based on "lay interpretation of raw medical evidence." Docket Item 7-1 at 20. But as noted above, an RFC finding need not be based on opinion evidence. *See Rubin*, 116 F.4th at 155. And what is more, the ALJ's RFC finding was indeed supported by opinion evidence here.

For example, in evaluating Latricia's physical impairments, the ALJ considered the opinion of J. Koenig, M.D., a state agency medical consultant. *See* Docket Item 6 at 17–18. Dr. Koenig opined that Latricia could lift up to twenty-five pounds frequently and up to fifty pounds occasionally; could sit, stand, or walk for about six hours in an eight-hour workday; and would have no postural, manipulative, or environmental limitations. *See* Docket Item 5 at 103. The ALJ found Dr. Koenig's opinion "somewhat persuasive," as it was supported by "a range of unremarkable physical examination findings." Docket Item 6 at 17. The ALJ found Latricia to be more limited than Dr. Koenig opined, however, explaining that "the other evidence of record [wa]s ultimately consistent with a range of light work due to[] obesity, cervical muscle spasm[s], and [Latricia's] repeated reports of abdominal pain." *Id.* at 17–18.

As to Latricia's mental impairments, the ALJ began by considering the opinion of M. Marks, Ph.D. *See id.* at 18. Dr. Marks found that Latricia had only mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. Docket Item 5 at 100. And Dr. Marks concluded that Latricia "ha[d] mild psychiatric impairments" that were "not severe." *Id.* The ALJ found Dr. Marks's opinion to be "somewhat persuasive," as it was "well-supported by [Dr. Marks's] review of the record,

6

which noted largely unremarkable findings on mental status examination" and was "consistent with the other evidence of record."  Docket Item 6 at 18.

The ALJ also considered the opinion of Susan Santarpia, Ph.D.  *See id.*  Dr. Santarpia found that Latricia had no limitations in any area of mental functioning.  *See* Docket Item 5 at 496–97.  And Dr. Santarpia concluded that Latricia's psychiatric impairments "d[id] not appear to be significant enough to interfere with [her] ability to function on a daily basis."  *Id.* at 496.  The ALJ found Dr. Santarpia's opinion to be "somewhat persuasive," as it was "well supported by an unremarkable mental status examination."  Docket Item 6 at 18.  But the ALJ explained that "the other evidence of record" supported greater mental limitations than Dr. Santarpia found.  *Id.*

Certainly, the opinions of Drs. Koenig, Marks, and Santarpia were sufficient to support the RFC.  *See Balsamo v. Chater*, 1442 F.3d 75, 81 (2d Cir. 1998) ("[A]n ALJ is free . . . to choose between properly submitted medical opinions.").  Indeed, the ALJ could have adopted their opinions wholesale to find Latricia less limited than he actually found.  *Id.*  Instead, the ALJ did what the regulations required, looked to the record as a whole, and found Latricia more limited than these providers found.  *See* Docket Item 6 at 17–18; *Matta*, 508 F. App'x at 56.  That was to Latricia's benefit and was not error. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (finding an ALJ's deviation "from consultative examiners' recommendations to *decrease* [a claimant's] RFC based on other evidence in the record" was not error (emphasis in original)); *Shauna N.B. v. Comm'r of Soc. Sec.*, 2025 WL 961466, at *5 (W.D.N.Y. Mar. 31, 2025) ("[T]he ALJ's decision to impose more severe limitations than the [medical opinions] found warranted is not a basis for remand.").

7

Latricia may disagree with the weight the ALJ assigned to each opinion and each medical record.  *See* Docket Item 7-1 at 19–22.  But it is not the function of this Court to re-weigh evidence or to determine *de novo* whether Latricia is disabled.  *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Because the ALJ crafted an RFC that was supported by the medical evidence, including the opinions of Drs. Koenig, Marks, and Santarpia, the ALJ did not err.

### B.  Dr. Dave's Opinion

For claims filed on or after March 27, 2017, such as Latricia's, an ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion[s] or prior administrative medical finding[s], including those from [a claimant's] medical sources."  *Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 7 (W.D.N.Y. 2022) (citation modified) (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)).  Instead, an ALJ evaluates the opinion evidence and "articulate[s] . . . how persuasive [he or] she finds the medical opinions in the case record."  *Id.*

The regulations list five factors for an ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "tend to support or contradict" the opinion.  20 C.F.R. § 404.1520c(c)(1)-(5).  An ALJ is required to "explain how [he or she] considered the supportability and consistency factors" because they are "the most important factors," and "may, but [is] not required to[,] explain how [he or she] considered the [remaining] factors."  *Id.* § 404.1520c(b)(2).

8

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] or prior administrative medical finding[], the more persuasive the medical opinion[] or prior administrative medical finding[] will be." *Id.* § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion[] or prior administrative medical finding[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] or prior administrative medical finding[] will be." *Id.* § 404.1520c(c)(2). In other words, supportability addresses how well a source explains and provides evidence for his or her opinion, and consistency addresses whether an opinion fits with the rest of the medical record. *See Spottswood v. Kijakazi*, 2024 WL 89635, at *1 (2d Cir. Jan. 9, 2024).

On October 5, 2017, Dr. Dave completed an internal medicine examination of Latricia. *See* Docket Item 5 at 498–501. Dr. Dave opined that Latricia's Crohn's disease may cause moderate limitations in "lifting, carrying, pushing, and pulling of heavy objects and activities requiring severe physical strain." *Id.* at 501. And Dr. Dave concluded that Latricia might "benefit more from seated activities with light activities such as standing and walking on and off with allowances for restroom breaks." *Id.*

The ALJ found Dr. Dave's opinion to be "of limited persuasiveness." Docket Item 6 at 19. In making that determination, the ALJ noted that "[o]ther than some skin abnormalities associated with psoriasis and [Latricia's] inability to perform more than . . . three quarters of a squat, [Dr. Dave's] physical examination of [Latricia] was unremarkable." *Id.* The ALJ also found that Dr. Dave's "extensive limitations in residual functioning" were "inconsistent with the other evidence of record, including some

notable favorable responses to treatment." *Id.*  To support that conclusion, the ALJ cited, as examples, Latricia's July 2020 report that she was "'doing well' without abdominal pain, nausea, or vomiting" and her August 2021 report that she had "'adequate control of her underlying disease' for the past year and a half." *Id.*  So the ALJ explicitly addressed the regulatory factors as he was required to do—that is, discussed how well Dr. Dave provided support for her opinion and how consistent Dr. Dave's opinion was with the other evidence in the record.  *See Benjamin v. Comm'r of Soc. Sec.*, 2026 WL 697004, at *1 (2d Cir. Mar. 12, 2026).

Of course, the ALJ could have—and perhaps should have—discussed the regulatory factors in greater detail.  But when an ALJ's reasoning can be gleaned from the record, additional discussion is not required.  *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").  In other words, while the ALJ could have discussed each treatment note and each medical record supporting or not supporting Dr. Dave's opinion in detail, the ALJ was not required to do that.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("[A]n ALJ is not required to discuss every piece of evidence submitted.  An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." (citation modified)).

In sum, the ALJ appropriately reviewed the supportability and consistency of Dr. Dave's opinion in light of Dr. Dave's own records and the other evidence in the record.

10

*See Benjamin*, 2026 WL 697004, at *1.  Latricia's argument that the ALJ improperly evaluated Dr. Dave's opinion therefore lacks merit.

### C. Highly Specific Limitations

If an ALJ includes a "highly[ ]specific" limitation in a claimant's RFC, that limitation cannot come from whole cloth.  *See Tomicki v. Berryhill*, 2018 WL 703118, at *5 (W.D.N.Y. Jan. 11, 2018).  In other words, when a medical provider opines about a specific limitation, an ALJ cannot arrive at some less-restrictive specific limitation unless that lesser limitation is supported by the medical record.  *See Balsamo*, 142 F.3d at 81. Therefore, when a provider finds that a claimant will be off task for up to a specific amount of time and the record provides no support for some lesser off-task time, a specific finding of some lesser time is not supported by substantial evidence.  *See Tomicki*, 2018 WL 703118, at *5 ("[T]he record does not support the ALJ's conclusion that [the claimant] needs to briefly switch between sitting and standing only every thirty minutes.  The ALJ did not cite any evidence to support this highly[ ]specific sit-stand option. . . . Moreover, there is evidence in the record indicating that [the claimant] needs to change positions every few minutes, not every thirty minutes.").

When no medical provider opines about a specific limitation, however, an ALJ does not err by giving a claimant "the benefit of the doubt" and crafting a more-restrictive specific limitation.  *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("The fact that the ALJ afforded [the p]laintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand.").  In other words, when medical experts opine that a claimant has no limitation, an ALJ does not err by finding some limitation—even a highly specific one.

Doing that gives the claimant the benefit of the doubt by crafting a more-restrictive RFC than the expert opinions require.

That was precisely what happened here. David Klimchuk, LMSW, opined that Latricia had "moderate limitations" in maintaining attention and concentration. *See* Docket Item 5 at 1128. But other providers disagreed. For example, and as noted above, Dr. Marks found that Latricia had at most mild mental impairments, which Dr. Marks "rated as not severe," *id.* at 100, and Dr. Santarpia found that Latricia had no limitations at all in any area of mental functioning, *id.* at 495–96. Most important, no provider found that Latricia's impairments would cause her to be off task for any amount of time.

Nevertheless, the ALJ found that "due to reports of chronic pain and/or medication side-effects, . . . [Latricia] will be off task 10% of the workday," Docket Item 6 at 15, and the RFC reflected that finding, *see id.* at 13. Certainly, the ALJ did not err by giving Latricia the benefit of the doubt and crafting an RFC that was more restrictive than any provider found. *See Ramsey*, 830 F. App'x at 39; *Kiera D. v. Comm'r of Soc. Sec.*, 2024 WL 5116739, at *4 (W.D.N.Y. Dec. 16, 2024) ("While the ALJ assessed somewhat greater limitations than Dr. Ransom (based on the ALJ's review of the entire record), this was proper."). Quite the opposite, that was to Latricia's benefit and was not error.

Latricia also suggests that remand is warranted because the ALJ "failed to explain these highly specific findings." Docket Item 7-1 at 25. But "[a]n ALJ does not have to state on the record every reason justifying a decision," *Valdes-Ocasio v. Kijakazi*, 2023 WL 3573761, at *1 (2d Cir. May 22, 2023) (quoting *Brault*, 683 F.3d at

12

448); rather, so long as an ALJ explains his or her reasoning in a way that allows this Court to "glean the rationale" of the ALJ's decision, there is no error, *see Cichocki*, 729 F.3d at 178 n.3 (quoting *Mongeur*, 722 F.2d at 1040). And the ALJ did precisely that here, explaining that "due to reports of chronic pain and/or medication side effects, . . . [Latricia] will be off task 10% of the workday." Docket Item 6 at 15.

In sum, the ALJ's decision was consistent with, or more restrictive than, at least some of the opinion evidence in the record. That was not error. *See Lesanti*, 436 F. Supp. 3d at 659. Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta*, 508 F. App'x at 56, and because the ALJ did just that, the ALJ's RFC determination was supported by substantial evidence. This Court will not second-guess it. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

**CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Latricia's motion for judgment on the pleadings, Docket Item 7, is DENIED, and the Commissioner's cross motion for judgment on the pleadings, Docket Item 10, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.


SO ORDERED.

Dated:        June 18, 2026
              Buffalo, New York


                                    */s/ Lawrence J. Vilardo*
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE